You may proceed. You must be Peter Wolfe. Oh yeah, I'm Mr. Wolfe. Here we go. I'm sorry, I didn't have my glasses on. Everybody's sort of fuzzy without my glasses on. How are you, Mr. Wolfe? I'm good, thank you. Good to be here. Well, we're glad to have you here. Always happy to. Although I think there is a sentiment in my office, in the U.S. Attorney's office, that going to San Francisco wasn't that bad either. Apparently, we're done with that now that the court's coming three times a year. Well, we will welcome you to San Francisco for other reasons. Thank you. We'll try to find administrative reasons for you too. But anyway, you may proceed. Anyway, good morning. May it please the court. I represent Dennis Lam. This case presents an entrapment question reviewed de novo from the district court and really only presents one half of the usual entrapment question or the potential entrapment question. It really is a question of predisposition. And the law, of course, is where the government has induced an individual to break the law in defense of entrapments at issue. And the government then has the burden to prove beyond a reasonable doubt the defendant was disposed to commit the criminal act prior to the first approach by the government agency. As you know, defendants win on entrapment defenses more often than on many other defenses. Like, I didn't do it. I wasn't there. It was, you know, my twin brother, evil twin brother, you know. So on defenses, juries tend to be quite demanding. I've seen acquittals in district courts in entrapment cases, and it happens quite often. But in this case, the jury didn't buy it. Well, that's true. But I think in part that was because the jury and the district judge, for that matter, didn't have it clearly enough presented or didn't analyze it carefully enough to see that what was proved here was a predisposition before the defendant committed the crime. But what wasn't proved was a predisposition before the government's agent approached the defendant. So in mid-August, the defendant committed the first of the offenses. But in mid-July was when he was first approached as a result of an accidental run-in between the government's agent, Mr. Picano, and him at a pizzeria. Well, you're asking us to review this under the Rule 29 standard, right? Because obviously the jury didn't buy it. So you're just saying essentially as a matter of law that there's insufficient evidence. That's right. Is Sherman your best case? I think Sherman probably is our best case. And I would read Sherman from 1958. The way I would read Jacobson then, which comes quite a bit later, is that Jacobson, which obviously had far more egregious facts in terms of inducement or lack of predisposition. But I think Jacobson was saying, look, Sherman was a serious decision and is still meant to be taken seriously even, you know, 40 or 50 years later. But I do believe that Sherman is our best case. Just in terms of just basically the undisputed facts, it's my understanding it's undisputed that your client was involved in sales five to six years previously. But he doesn't have convictions, right? That's right. He has a DUI conviction. I think it's in the PSR. But he doesn't have prior drug convictions. That's right. And the informant initiates the contact before DEA becomes involved, right? Well, DEA is involved to the extent that they've made him their informant, and he's out operating to work off his fees or whatever. Right. So it's really on your kind of hanging your hat on his reluctance to sort of initially, apparently DEA calls off the informant initially because they don't have the recording device on, and then your client indicates, well, hey, I don't really want to, you know, you kind of screwed up and you didn't come up, so I'm not interested. So then money starts getting talked about, and it's like, well, yeah, if you can come up with the money. So the question is, you know, I mean, couldn't the jury have found that your client was reluctant until the money got good enough? Well, I suppose that would be one view. Well, if that view is there and that's a rational way that the jury could have made those inferences, isn't that the end of the story for you? I mean, we have to find and favor, you know, we have to look favorably on what the jury could have done. I think that actually isn't the end of the case because what Mr. DeCando testified, among other things, was that he had known Mr. Lamb about three years, and he had no knowledge whatsoever that Mr. Lamb had any involvement with drugs. And then when you look at the conversations that were finally recorded after the chance encounter was not recorded, and there was two subsequent phone calls that weren't recorded, and then there was the first of the phone calls. But even in the first of the phone calls, there's reluctance demonstrated. Lamb is saying, no, no, I can't. I just thought about it. I hate these MFers that deal that. Well, you skipped over, or maybe I've got the sequence wrong, but were there a number of calls that your client put in to the informant that the informant didn't take? Well, actually, I think the record shows, Your Honor, the government has argued that Mr. Lamb provided his number to Mr. DeCando, but the record doesn't actually support that. How did DeCando decide to target Lamb? Did DEA choose Lamb and ask DeCando to go after him? No, he just saw him in the pizzeria, and he assumed or he thought that because of the person that Lamb was with who didn't know. Looked like a drug dealer of some kind. Right, and we know from Fourth Amendment law and the Arvizo case that these stereotypes can't even be a basis of reasonable suspicion, so. Yeah, but DeCando just said, well, that's why I decided to ask him about it. Right, and there was not even any agreement that they would have any further conversation. What evidence in the transcript can you point to that evidences Lamb's reluctance or resistance? I mean, is mere reluctance going to do that? Is that going to show an absence of predisposition? I think that when we have a situation like this here, where you have a period of time between whatever Lamb's involvement was before, whether it was as a user or a dealer is unclear from the record. When you have a period then of five years or so, during which there's no evidence he's doing anything, in which there is evidence that he, because he says so in some of the recorded calls, that he had changed his life, that he wasn't fooling with that, or to that extent that wasn't who he was anymore. He had a construction job and so forth. I think that those things are significant, particularly when those come in the third phone call. So DeCando has already had two phone calls with Lamb. And to the extent that an acquittal here might, the government can solve this problem, if it has one in this case, by simply having the DeCandos of the world tape record all the phone calls they make to the Lambs of the world, and then there isn't any issue about what actually happens. I mean, so to the extent that the record is, we think, not showing any predisposition before the contact, the government can solve that problem in the appropriate case, or in this case. Can I get you back to my question, which I don't think you've answered? You've got the excerpts of the record? I do. Turn to page 145. That's specifically style 3 of line 6. This is DeCando testifying. Between line 6 and line 16.  Line 145 of the excerpts of the record. It's a page that has 110 written at the top. It's page 110 of the record. Okay, yes. Okay, so he says, the question is, I believe, I'm sorry, the answer is, I believe he was trying to contact me. I mean, you see, this makes reference to Mr. Lamb, this is DeCando speaking. But I was targeted by DEA not to answer those calls because I do not have the proper equipment. Question, well, you said you believe he tried to contact you. How do you know that? What did you believe? Answer, I've seen the calls coming in. I did not answer the calls. I was instructed not to answer the calls. Question, you said you saw the calls coming in? Answer, yeah, coming in on my cell phone. Question, so you have caller ID? Yes. I ignored those calls, yes. So this is what I'm asking about. In between the conversations, this initial contact, and then the conversations were recorded, we have Mr. Lamb making several calls to DeCando. Now, we know that some of those calls had to do with offering drugs because in his later conversation, he expresses exasperation with the fact that DeCando wouldn't answer. And he says, you know, because you didn't do it, you know, I'm not willing to do it. So we know that he made calls. He affirmed the report before the recording started. He makes calls with the intent of offering drugs. At least a jury could infer that. Isn't that the case? Yeah, I think that's right. I mean, there's no question here that before he does the drug deal I'm sorry, let me just counter his question. Why is that the end of your case? Because what that proves is that he had a predisposition to do the drug deal before he did the drug deal. But what the law requires is a predisposition to do the drug deal before he's contacted by the government's agent. That's the distinction that the government has overlooked here. And if I'm either right or wrong about it, I think that the court is overlooking it. But no amount of recording will tell you that, what was going on in his mind before the conversation. So you have to infer his state of mind prior to the initial government contact from the things he says or does afterwards. Because most suspects don't go around making tape recordings or videotapes saying I'm predisposed to deal drugs. I sure wish somebody would contact me to sell drugs. We don't have stuff like that. So the only way we can tell what his state of mind was back then is by looking at his actions and conduct and his speech afterwards. It's the only way it can be done, right? In general, that's true, but that's not... Have you ever seen a case like that? No, I haven't. Okay, I mean, I seriously believe you. But that's not all the record shows here. The record shows, because Takano testified... He has a contact. And bam, as soon as he gets... the informant talks to him about dealing meth, he says, yeah... And then he starts calling back. He calls and he calls and he calls. And later he complains about the fact that this guy wasn't there when he... So maybe he wanted the deal after all. I don't know. I think the jury would have to be, you know, drunk or... not listening, not to find the predisposition on that record. Well, I... It's certainly permissible influence. I don't think it's true when you look at the other evidence. I think what that proves is the point that I tried to articulate with limited success, I see. That that proves a predisposition before the drug deal. But we know that that has to occur in every case because otherwise there wouldn't be a drug deal. What's required is a predisposition before the contact. And that's where the record demonstrates there was no predisposition because Takano himself testified that Lamb had told him, this is what I used to do, that it's not what I do anymore, that he was full-time... So what could we do? You said they could solve this problem by having tape recordings. But your client doesn't really dispute what was said in that initial conversation. Takano gives an account. Your client pretty much agrees with it. We rely on that to show that he wasn't predisposed before the contact. That's what's required. And the jury could have come to that conclusion, I suppose. Well, there's no point in having de novo review of this issue as a matter of law. One could always say the jury could have done that. In fact, the jury did do that because... Well, even if we buy your approach to this, you still have to stick to the little fact that it's undisputed that he did sell drugs five to six years previously. So that would have to be factored into all of these other pieces as well, right? As opposed to, say, if I never sold drugs before, and so I don't have that in my past, and so then... I mean, that's another piece of the puzzle. I agree with you, but I think that's the piece of the puzzle that Sherman answers, in my view. Sherman resolves that point. Because in Sherman, there was prior evidence of... I can't remember if it was drug use... It was like nine years. I think nine years and... Right. You're out of time. Yes, thank you. Good morning. May it please the Court. Assistant United States Attorney Tom Brady, on behalf of the United States. I just want to clarify one point. In this case, you brought up that in this case, Mr. Lam, the evidence supports that he dealt drugs five to six years ago, and I don't think that's what he said. Obviously, he didn't testify, but I think what he said in the telephone conversation was something that he did, and I think the inference was, at least from the government's point of view, was that he sold drugs five to six years ago. But the inference by the defense is that he was a drug user. So it was not clear, and I wanted to make sure the Court understands that, at least from the record that I read. Does the Court have questions for the government as to inducement? And I have to say that the government is not conceding inducement. I think it's clear that certain things aren't in dispute. One is that the jury was properly instructed, although – I was thinking about your first comment. I think what I heard Judge Callahan refer to is the inference that the jury could have drawn from the evidence, that they could have inferred that he was dealing, they could have inferred that he was using. If that was what – Are you conceding that the jury could not have drawn the inference? No, I'm not. I'm just making sure that the Court is aware that it was an inference. It wasn't actually what he had said in the tape conversation, that he had dealt drugs five to six years ago. But your position is that the jury could infer, based on the evidence there, that he did deal. That is correct. That's a reasonable inference. Possibly dealing. Correct. So go ahead. And the other point I was going to make is that we are not conceding, the government is not conceding inducement. In fact, we don't believe there was inducement in this case. As the Pullman decision points out, inducement is something more. It's opportunity plus something more. Oh, I don't know the Pullman. And I don't think we have that in this case. I think what we have is opportunity knocking and Mr. Land answering that door. We provided him – I think the record would probably support the inference that if the informant, Mr. O'Connor, hadn't run across Mr. Land, Mr. Land might very well have gone ahead and not engaged in any drug dealing at this time. And you call that opportunity? Correct. And I think that is shored up by the fact that, again, we're talking about a short period of time. The latter part of July is when there was contact, and it was not initiated by DEA agents per se. It was a chance encounter at a restaurant near town. Why was DeCano even looking for somebody to pull him in? From the record, it suggests that he was arrested about a year earlier in 2005. DeCano. DeCano was arrested. Right. And he was cooperating with DEA trying to work down his sentence or whatever his penalties were. And that he was out there for that period of time. He's just trolling. Trolling. Anybody he knew that was involved in drugs, he was to report back to DEA. And was DEA's interest in this to find the people – I mean, are they really interested in Land? Are they interested in somebody and whoever Land is dealing with? Obviously, I don't think they had any – I don't think Mr. Land was on their radar screen at the time. And I think when you talk about boots on the ground, the agents and the guys that are dealing with drugs in the streets, they are looking for anybody who's dealing in drugs. And sometimes these people like Land, who are, in his own words, a middle manager or a middle man, it leads to the other people, the bigger fish. And I think that's what our cooperating source – that was his marching orders, was go out there and find out who's doing drugs. And then from there, we will investigate and hopefully move up the chain. Okay. Thank you. All right. Mr. Wolf, would you like a minute for a button? I think that what's clear from this court's decision in Martinez is the evidence has to show what the court there said is a preexisting predisposition, meaning the predisposition has to exist before the contact with the agents. And I think that's what's lacking here. What would you like the government to have proven on that? How can they show predisposition before Tucano ever talks to Land? Other than by the fact that Land responds sort of willingly and apparently initiates calls, but Tucano doesn't take because he's not wired for it. What else is the government supposed to prove? Well, once entrapment is raised, actually the field is wide open. They can prove things by reputation. They could prove that the DEA had the guy on their radar screen. I mean, the rules of evidence on predisposition are very – they're really as broad or broader than that sentencing material. Well, I understand there's a lot of other things that in an ideal situation or in other circumstances the government might be able to prove. But why is it a failure of proof if what the government shows is that Land willingly responds to Tucano? He does a little bit of back and forth on the telephone, but as I read those transcripts of the telephone calls, it's not really resisting. Tucano's not having to work very hard. Once the phone calls are recorded, I agree with you at that point, but it's before that. There's two calls that aren't recorded, and during which those – And Tucano testifies that Land was calling into him, and he's not answering the calls. That's in between. But the first two calls, Tucano's testimony establishes that Land had told him that he had lost everything to drugs, that he didn't do that anymore, that he was a full-time construction worker and defined himself through that legitimate employment. And Tucano himself, who had known Land for three years, had no suggestion to report that he knew that Land had any involvement with drugs. So I think that's what I would rely on. Okay, thank you. Thank you. Okay, Josiah, you must have some air.
judges: Kozinski, Bybee, Callahan